STATE of Missouri, Plaintiff-Respondent,

v.

James JONES, Defendant-Appellant.

No. 36245.

Missouri Court of Appeals,
St. Louis District,
Division Four.

May 6, 1975.

Jerry Lybarger, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

A jury convicted James Jones of Carrying a Concealed Weapon. § 564.610, RSMo 1969, V.A.M.S. Committed to the department of corrections for five years he appeals, contending first that the court erred in not directing his acquittal for failure of the State to prove the element of concealment, which is an essential element of the offense of carrying a concealed weapon. State v. Starks, 459 S.W.2d 249 (Mo.1970).

The State introduced evidence that following a high-speed chase through the streets of the City of St. Louis in which an automobile driven by appellant was pursued by several police cars, appellant was finally forced to stop; that appellant stepped out of the car; that Officer Mokwa approached appellant to arrest him; that when the officer approached appellant the officer could not see the gun (a .22 calibre automatic pistol which he found in appellant's right front trouser pocket in the course of a search of appellant's person). The officer pulled the pistol (which was

loaded and in operating condition) from appellant's pocket and seized it.

■ The test of concealment is whether the weapon is so carried as not to be discernible by ordinary observation. State v. Starks, supra; State v. Tate, 416 S.W.2d 103, 105[2] (Mo.1967); State v. Bordeaux, 337 S.W.2d 47, 49 (Mo.1960). A jury could reasonably find that an officer bent on apprehending a fleeing man, approaching the subject with the object of placing him under arrest, would observe the subject with more than ordinary care to ascertain if he was armed, and that if under these circumstances the officer "could not see the gun" the gun was not "discernible by ordinary observation" and therefore was concealed.

In State v. Baumann, 311 Mo. 443, 278 S.W. 974 (1925), evidence that defendant "ran her hand in her overcoat pocket and pulled out a gun" was held sufficient evidence to prove the allegation of concealment. Evidence that defendant "had a loaded revolver concealed in his pocket" was held to justify a conviction in State v. Athanas, 150 Mo.App. 588, 131 S.W. 373 (1910). In State v. Hovis, 135 Mo.App. 544, 116 S.W. 6 (Mo.App.1909), evidence that defendant was carrying a pistol in his right hip pocket was held to constitute carrying a concealed weapon upon his person. It is stated in 43 A.L.R.2d, Anno: Concealed Weapon, § 7, p. 522, that "The vast majority of the cases supports the proposition that a weapon in the pocket of the defendant is within the provisions of the statute, unless some particular circumstance rules otherwise." There is no particular circumstance ruling otherwise in this case. Particularly in point on the facts are the following cases from other jurisdictions. In Thomas v. State, 9 Ala. App. 67, 64 So. 192 (1913), the arresting policeman testified that defendant put the pistol in his pocket, and that he (the policeman) "ran [his] hand in his hip pocket and got it; it was not visible." This was held sufficient, if believed, upon

which to predicate a finding that the pistol was hidden from ordinary observation. In Harms v. Commonwealth, 309 Ky. 772, 219 S.W.2d 8 (1949), the arresting officer put his hand in defendant's right front pocket "and took a pistol off him." Commenting that the officer could not see the weapon until after he had taken it from the subject's pocket, the court held that if a weapon is in the pocket of a person he is guilty of a violation of the concealed weapon statute.

Appellant's second point is that the court erred in not sua sponte declaring a mistrial; not instructing the jury with reference to proof of other crimes, and not stopping the State's argument with reference to other crimes. Police were on a detail to apprehend unidentified and undescribed holdup men who had recently been "plaguing" a certain district of the city. Two officers in a parked police vehicle had a certain house under surveillance. They observed appellant and three other men come out from behind that house, get into a car parked nearby, and drive away. Appellant was the driver. The police began pursuit, attempting to stop the car by use of their siren. The car did not stop, but speeded up. After a chase covering several blocks the car slowed down and a man in the back seat threw a brown bag out of the car, then speeded up again. The police car slowed down. One of the police officers dismounted and retrieved the brown bag, which contained a pistol. The driver of the police car continued the pursuit without waiting for the officer who dismounted. Three or four other police cars were summoned by radio and joined the chase, during which the car driven by appellant attained speeds of 50–65 m. p. h. The speed limit in that area was 25 m. p. h. Finally the lead car was brought to bay and skidded to a stop. The four men got out of the car and started to flee but were apprehended and arrested. In opening argument the circuit attorney, referring to the high-speed chase in the city streets, in an effort to explain "what

kind of guns" he was talking about when he was picking the jury, said, "I'm not talking about four men going hunting. I'm not talking about four gun collectors. I'm talking about four men who entered a car and when the officers tried to pull them over took off at high speed over twice the speed limit, and began to chase them. A siren couldn't stop them. Those are not four men out on a hunting trip. * * *"

■ No objection or request for a court ruling was made by appellant with reference to the evidence or the argument. Assignments of error with respect to the admission of evidence, State v. Thomas, 438 S.W.2d 174 (Mo.1969); 24 C.J.S. Criminal Law § 1672, c., p. 1089; or to an argument, State v. Cheek, 413 S.W.2d 231 (Mo.1967), relating to other crimes committed by the defendant, not objected to at the trial, are not preserved for appellate review.

■■ Admitting this, appellant asks for review under the plain error rule, citing cases [1] for the undoubted general rule that evidence which tends to prove other crimes is inadmissible. Appellant does not make clear what "other crimes" he is referring to. First let us assume that he refers to the holdups. For a reason not disclosed by this record the officers' attention had been drawn to the house in the 1400 block of Prairie Avenue where the four men were first seen. The officer's testimony that he and his partner were "on a detail to attempt to apprehend the holdup men that had recently been plaguing the district" apparently was given to account for the physical presence of the two officers. The difficulty is that no witness testified that appellant committed any of the holdups in question, or was implicated in or a suspect in connection therewith. In the cases cited by appellant [1] the other crimes were shown to have been committed *by the de-*

*fendant.* In order to invoke the rule of exclusion there must be evidence that *the defendant* has committed, or has been accused of, charged with, convicted of, or been definitely associated with, another crime or crimes. There is no such evidence in this case; nothing to show any nexus between appellant, the house under surveillance, and the holdups. As far as appears from this record appellant's appearance on the scene as he came around the house and entered the car was wholly fortuitous and entirely innocent of any connection with the holdups. The rule of exclusion does not apply when there is no evidence linking the accused with the other crimes.

■ Next let us assume that in protesting against the evidence of other crimes appellant refers to the traffic offenses shown to have been committed by appellant as he sped through the city streets exceeding the speed limit and violating other traffic laws. This reference avails appellant nothing for the reason that this was a part of the res gestae—the traffic violations were part and parcel of one continuing series of events: the pursuit, apprehension, arrest, and search of appellant. Significantly, appellant has not raised questions of probable cause and warrantless search and therefore questions as to the validity of the arrest and search are not before us. See State v. Perry, 499 S.W.2d 473 (Mo.1973).

For these reasons the rule of exclusion appellant relies on has no application in this case.

■ Nor was there error in the circuit attorney's argument to the jury. A necessary element of a conviction under § 564.610, supra, is the intention to carry a weapon concealed. State v. Hall, 508 S.W.2d 200 (Mo.App.1974). The State was entitled to argue that the guns were not

---

1. State v. Summers, 362 S.W.2d 537 (Mo. 1962); State v. Griffin, 336 S.W.2d 364 (Mo.1960); State v. Atkinson, 285 S.W. 2d 563 (Mo.1955); State v. Reese, 364 Mo. 1221, 274 S.W.2d 304 (banc 1954).

being carried for legitimate purposes, such as hunting or gun-collecting, but were being carried for unlawful purposes, as bearing upon the question of the intent with which they were being carried. The argument did not necessarily imply that the police were dealing with four holdup men.

Accordingly, the court did not err in not sua sponte declaring a mistrial when the unobjected-to testimony was adduced; in not instructing the jury on the subject of other crimes committed by appellant, and in not interrupting the unobjected-to argument. Our review under Rule 27.20(c), V.A.M.R., does not reveal manifest injustice done or that a miscarriage of justice resulted from the testimony and the argument, or from the failure of the court to take the actions for which appellant now for the first time on appeal contends.

Judgment affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.