STATE of Missouri,
Plaintiff-Respondent,

v.

Rodney HOLMES, Defendant-Appellant.

No. 43353.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 11, 1981.

Motion for Rehearing and/or Transfer
Denied Sept. 21, 1981.

Application to Transfer Denied
Nov. 10, 1981.

Mary K. Wefelmeyer, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Lew A. Kollias, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

This is an appeal by the defendant, Rodney Holmes, from convictions for the offenses of robbery in the first degree and felonious restraint. §§ 569.020 and 565.120, RSMo 1978. Defendant received a ten year sentence for robbery and a consecutive five year sentence for felonious restraint. Defendant appeals.

Defendant does not challenge the sufficiency of the evidence, so that only those facts necessary for the disposition of the points raised on this appeal need be stated. A jury could reasonably find the following: On the evening of October 8, 1979, Joseph Vaughn had left an ice cream store and crossed the street to his car. As he unlocked the door, a man, later identified as defendant, pointed a gun at his face and announced a "stickup." Defendant ordered Vaughn into the car where he surrendered upon demand $57 in bills and placed his car keys in the ignition for defendant. Defendant ordered Vaughn to keep his head down in the car threatening to shoot him if he did not comply. Defendant started up Vaughn's car and drove approximately three or four blocks away where he released Vaughn and drove off with his car.

On the afternoon of October 9, 1979 Officer Smith of the Illinois State Police observed an automobile containing three persons travelling at a high rate of speed and weaving across all three lanes of the highway. Officer Smith followed the car, clocking its speed at approximately 85 miles an hour and noting its license number. He pursued the car as it exited the highway onto a side road. The car travelled about a quarter of a mile, turned onto a residential street and pulled into a private driveway. Officer Smith pulled into another driveway and observed the individual who had been driving the car, later identified as defendant, get out, remove the rear license plate and place it in the trunk. Defendant then exchanged positions with the individual who had been in the right rear passenger seat. The car retraced its route back towards the highway and entered a service station.

Officer Smith approached the car and placed all three passengers under arrest. A search of the car produced open liquor and a handgun on the backseat.

The next day officers from the St. Louis Police Department accompanied Vaughn to Springfield, Illinois where the three men were held. Vaughn identified defendant out of a lineup as the man who had robbed him. He also identified the automobile and gun found on the backseat as his.

█ Defendant's first contention on appeal is that the convictions for both felonious restraint and robbery in the first degree constituted double jeopardy. § 569.020 RSMo 1978 provides that:

"1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof ... (2) Is armed with a deadly weapon; or (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument."

§ 565.120 RSMo 1978 provides that:

"1. A person commits the crime of felonious restraint if he knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty and expose him to a substantial risk of serious physical injury."

Defendant argues that the force used for the robbery was the same as that used for the felonious restraint and that the entire episode was a continuing course of conduct in that the victim's property was not removed from his possession until the flight of the robber. Thus, the defendant's argument is that the restraint of the victim was an incident within the overall offense of robbery. The evidence refutes this contention. The victim, Joseph Vaughn, testified that he was forced at gunpoint into his car where he was ordered to give defendant all of the money in his possession and to put the keys in the ignition. Defendant subsequently drove off with the victim still in the

car. This was sufficient to establish the elements of robbery in the first degree under § 569.020 RSMo 1978. Thereafter defendant further restrained the victim, threatening to shoot him and ordering him to keep his head down in the car as he drove three or four blocks before releasing him. This action constituted a separate offense of felonious restraint occurring after the commission of the robbery.

This conclusion is supported by the case of *State v. Collett*, 526 S.W.2d 920 (Mo.App. 1975) involving an appeal from a conviction for the offense of robbery in the first degree and assault to do great bodily harm with malice aforethought. The defendant in *Collett* held up a service station attendant, ordering him to hand over all the money in the cash register. The victim was then taken to a back room where he was beaten a few minutes later. The court in upholding defendant's conviction for both offenses, stated that:

"If there is but a single act of force proved as an essential element of the crime of robbery, then such act of force cannot be availed of as constituting the separate crime of assault, but the rule is otherwise where the existence of the distinct elements as realities is established, as where the force relied on to establish assault occurred after the robbery had been accomplished. *Id.* at 933."

The court believed the latter principle applicable holding that there were two distinct offenses: the robbery when the gun was pulled and the victim forced to turn over the money and the subsequent assault when the victim was beaten in the backroom. Similarly in the present case two distinct offenses occurred: the robbery when Vaughn was forced at gunpoint to turn over his money, and his keys and the defendant drove away in Vaughn's car and his subsequent restraint until he was released three blocks away. Therefore, defendant's conviction for the two offenses did not place him in double jeopardy.

■ Defendant's second contention is that the court erred in not suppressing the identification of the defendant as the fruit of an illegal arrest. Defendant relies on *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) involving the fourth amendment constitutionality of random automobile stops by police. In *Delaware* the stop was not based on any observed traffic or equipment violation but was merely a random stop in order to check the driver's license and car registration. Upon stopping the car, the officers discovered marihuana in plain view on the car floor. The marihuana was seized and the occupants subsequently were indicted. The Supreme Court held that such random stops, without probable cause to believe nor reasonable suspicion that the car was being driven contrary to the applicable laws governing the operation of motor vehicles or that the car or its occupants were subject to seizure in connection with the violation of any other law, violates the Fourth Amendment.

Defendant's reliance on the *Delaware* case is ill founded. Unlike the defendant in *Delaware*, the defendant in this case was observed violating the traffic laws by speeding and driving in a reckless manner. Further, the defendant was engaged in suspicious activity as he was observed driving off the highway and onto a residential street, stopping in a driveway, removing the rear license plates from the car and then exchanging positions with a passenger as the car retraced its route back towards the highway. When questioned by the trooper at the service station, defendant could not produce identification or documents proving registration of the car. After defendant was arrested, a search of the car revealed an open wine bottle and a gun in the back seat. Considering these facts, we conclude that there was sufficient probable cause to support the arrest and subsequent detention of defendant. Thus, the defendant's arrest was not illegal and the trial court correctly overruled his motion to suppress identification as the fruit of an illegal arrest.

■ The third point raised by defendant is that the court erred in refusing to exclude evidence of the victim's gun found on

the rear seat of his stolen automobile as this was evidence of other crimes because defendant had been charged with the unlawful use of that weapon in Illinois. This evidence was introduced with respect to the description and identification of items which were in the victim's automobile and subsequently recovered at the time of defendant's arrest. The jury was never apprised that the defendant was charged with possession of a weapon.

The court in *State v. Jones*, 523 S.W.2d 152 (Mo.App.1975) stated that "in order to invoke the rule of exclusion there must be evidence that the defendant has committed, or has been accused of, charged with, convicted of, or been definitely associated with, another crime or crimes." *Id.* at 155. Thus, the exclusion of evidence of other crimes does not apply when there is no evidence linking the accused with the other crime. *State v. Nickens*, 581 S.W.2d 99 (Mo.App. 1979). Application of this principle to the present case refutes defendant's contention. There was no evidence introduced that defendant had been convicted, accused of or charged with the unlawful use of the gun in Illinois. The evidence as to identification of the gun was introduced along with the identification of other items found in the victim's stolen automobile in order to help establish defendant's identity as one of the perpetrators of the offense in question. Therefore, the mere testimony identifying the gun did not fall within the proscription of introducing evidence of other crimes.

■ Defendant's fourth contention refers to certain statements made by the prosecutor in his closing argument. The first statement to which objection was made referred to the amount of money taken from the victim. The prosecutor stated that the victim had "said $57.00 was taken when $80.00 was taken." He went on to say "I'm sure you heard him say $57.00 and there was a bunch of change in the back trunk which I never got which all totaled up to $80.00. He had $23.00 in change." The prosecutor's remarks were supported by the testimony of the victim who related that upon demand he turned over $57.00 in bills to the defendant and that there was another $23.00 in change in the trunk thus totaling $80.00. Defendant's contention that the prosecutor had misstated this evidence is, therefore, without merit.

The second statement to which objection was made involved an adverse inference argued by the prosecutor with respect to a missing witness. Specifically the prosecutor referring to Darrell Bishop, defendant's friend and one of the men arrested with defendant, stated: "Well, his witness, his buddy and he didn't come into court and say it happened the way ..." This statement was made in response to inferences made by defendant's attorney as to Bishop's absence. In her closing argument, defendant's attorney stated:

"Who was driving the car? I submit to you, take a close look at the picture of the lineup and the third man in the lineup, that of Darrell Bishop. You will realize that the description, the vague description, given on Monday night by Joe Vaughn also fits Darrell Bishop.

Reginald Woods has passed and he cannot be here to testify. Darrell Bishop is not here. I would say there are many unanswered questions that you should consider."

It has been established that while it would be improper for the state to argue as to defendant's failure to call a witness in his behalf where the witness was equally available to both parties; the state is entitled to respond when defendant raises the issue such that the state's comment is retaliatory in nature *State v. Houston*, 451 S.W.2d 37, 40 (Mo. 1970). Without deciding the availability of the witness to each party it is clear that the prosecutor's statements were in response to inferences first raised by defendant's attorney in her closing argument. Thus, the court did not err in failing to grant a mistrial.

■ Defendant's final contention is that the court erred in refusing the instruction on identification offered by defendant. This identical instruction (with one slight variation in the present case) was con-

sidered by the Missouri Supreme Court in *State v. Quinn,* 594 S.W.2d 599 (Mo. 1980). The court rejected this instruction as unnecessary, holding that defendant's theory was sufficiently covered by the MAI–CR instruction given. Since the instructions in the present case are virtually identical,[1] we hold, without further discussion, that the trial court did not err in refusing defendant's instruction.

Judgment affirmed.

CRIST, P. J., and SNYDER, J., concur.

1. In both cases, MAI–CR 3.20 was submitted to the jury along with similar instructions specifying that the jury must find beyond a reasonable doubt that the defendant committed the act.