**STATE of Missouri, Plaintiff-Respondent,**

v.

**Jack D. SIMPSON, Defendant-Appellant.**

**No. 12491.**

Missouri Court of Appeals, Southern District, Division One.

Aug. 16, 1982.

Motion for Rehearing or to Transfer to Supreme Court Denied Aug. 23, 1982.

Application to Transfer Denied Oct. 18, 1982.

John D. Ashcroft, Atty. Gen., William K. Haas, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Loren R. Honecker, Sherwood, Honecker & Bender, Springfield, for defendant-appellant.

GREENE, Chief Judge.

Defendant, Jack D. Simpson, was charged with having more than 35 grams of marijuana under his control. §§ 195.020 and 195.200.1(1)(b), RSMo 1978. Simpson waived jury trial, was court-tried, found guilty, and sentenced to three years' imprisonment.

The only issue on appeal is the contention that the trial court erred in overruling Simpson's pretrial motion to suppress evidence (the marijuana) because the marijuana was seized as a result of an illegal search, in violation of his constitutional rights guaranteed to him in the United States (Fourth Amendment) and Missouri Constitutions (Art. 1, § 15). These sections provide that all persons shall be secure in their persons, homes, papers and effects against unreasonable searches and seizures.

Since no claim is made that the evidence at trial was insufficient to sustain a finding of guilt, a detailed recitation of the facts is unnecessary. It suffices to say that Jasper County, Missouri, law enforcement officers seized, under authority of a search warrant, 85 to 100 marijuana plants that were growing in an open field cultivated plot contained in a wooded area which was estimated by witnesses to be located 100 years to a ¼ mile from the farm house located in rural Jasper County. Simpson and a man by the name of Daniel Cheshewalla, Jr. were "staying" at the farm house. A laboratory analysis of samples from approximately ten pounds of material taken from the plants showed them to be marijuana.

Cheshewalla testified at trial as a witness for the state. He said that Simpson asked him to assist in watering, tending, and guarding the marijuana patch in return for 10% of the proceeds of the sale of the crop, and that he had done so. Simpson also stood guard, and instructed Cheshewalla in the art of caring for marijuana plants. The two men had "stayed" at the farm house for a period of about two weeks prior to their arrest.

The marijuana patch was discovered by Jasper County Deputy Sheriffs during a warrantless intrusion into the farm house area while investigating a possible link between two homicides in a neighboring Kansas county and a report of a large marijua-

na growing operation on a farm in Jasper County, Missouri. The Kansas sheriff heading the homicide investigation had a "hunch" that possibly the homicides were drug related. While on the premises, the officers discovered the marijuana patch by following a garden hose from the house to the plot and, based upon what they saw, applied for and received a search warrant to search the house and adjoining lands for controlled substances. The seizure of marijuana followed.

Simpson argues that there was no probable cause for the initial intrusion onto the farm grounds by law enforcement officers and, this being so, the fruits of the subsequent seizure by purported authority of a warrant was tainted to the point that evidence obtained as a result of the seizure should be excluded under the fruit of the poisonous tree doctrine as enunciated in *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1919) and subsequent cases. This argument is interesting, but irrelevant.

Although we have serious doubts as to whether Simpson has standing to raise the constitutional search and seizure questions, since the record is devoid of proof that he had a legitimate expectation of privacy in the place searched by the officers [*State v. McCrary,* 621 S.W.2d 266, 273 (Mo. banc 1981)], the proper focus should not be on the question of standing, a concept which has been somewhat discredited for purposes of Fourth Amendment analysis [*Rakas v. Illinois,* 439 U.S. 128, 138–139, 99 S.Ct. 421, 427–28, 58 L.Ed.2d 387 (1978)], but rather on the question of the applicability of Fourth Amendment protections to the facts of this case.

It has been consistently held that the guarantee against unreasonable searches and seizures does not extend to open fields. *Air Pollution Variance Bd. v. Western Alfalfa Corp.,* 416 U.S. 861, 865, 94 S.Ct. 2114, 2115, 40 L.Ed.2d 607 (1974); *Hester v. United States,* 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1923); *State v. Zugras,* 306 Mo. 492, 497, 267 S.W. 804, 806 (1924); *State v. Cobb,* 309 Mo. 89, 101–102, 273 S.W.

736, 739 (1925); 68 Am.Jur.2d Searches and Seizures § 20 (1973 & Supp. 1982). In Mr. Justice Holmes' words (Hester, supra), "[t]he special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects' is not extended to open fields. The distinction between the latter and the house is as old as the common law."

■ However, careful distinction must be made between an open field, which is accorded no protection, and the curtilage of a house, which is within Fourth Amendment protection. *State v. Buchanan,* 432 S.W.2d 342, 344 (Mo.1968); *State v. Stavricos,* 506 S.W.2d 51, 57 (Mo.App.1974). The curtilage includes all out-buildings used in connection with the residence, such as garages, sheds, barns, yards, and lots connected with or in the close vicinity of the residence. *State v. Zugras,* supra, 267 S.W. at p. 806; *Brinlee v. State,* 403 P.2d 253, 256 (Okla.Crim.App.1965); 68 Am.Jur.2d Searches & Seizures, supra. Open fields separated from buildings by a distance of ¼ to ½ mile have been held not to constitute part of the curtilage. *McDowell v. United States,* 383 F.2d 599, 603 (8th Cir. 1967). Under these authorities, it is clear that the wooded area here, approximately 100 yards to ¼ mile from farm buildings, does not fall within the definition of curtilage such as to envelop it with Fourth Amendment protections.

■ The open field exception to the Fourth Amendment applies even where a civil trespass is involved. *Stavricos,* supra, at pp. 57–58; *United States v. Capps,* 435 F.2d 637, 640 (9th Cir. 1970); *McDowell v. United States,* supra, at p. 603 (8th Cir. 1967); 68 Am.Jur.2d Searches & Seizures, supra. Thus, even if we assume that the police officers may have been trespassing, due to lack of probable cause, that fact provides no basis for a Fourth Amendment claim against a search of an open field, and the seizure of contraband found therein. By obtaining a warrant, the officers accorded defendant more constitutional protection than was required under the circumstances.

The trial judge did not err in overruling the motion to suppress evidence.

The judgment is affirmed.

All concur.