STATE of Missouri, Respondent,

v.

James FULLERTON, Appellant.

No. WD 35083.

Missouri Court of Appeals,
Western District.

Dec. 26, 1984.

David H. Jones, Springfield, for appellant.

John Ashcroft, Atty. Gen., and Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and DIXON and CLARK, JJ.

PER CURIAM.

Defendant was convicted upon jury trial of growing and cultivating marijuana, § 195.020.1, RSMo Supp.1982.[1] He was sentenced to 20 years in prison in accordance with the jury verdict, § 195.200.-1(1)(a), RSMo Supp.1982. Defendant has appealed, alleging eight separate instances of trial error which he claims entitle him to a reversal. We affirm the conviction.

The facts are as follows:

Defendant owned a 196-acre farm in Polk County. On August 22, 1982, a Polk County deputy sheriff, in an area two miles from defendant's farm, came upon an unoccupied parked car whose trunk was open, revealing freshly-cut marijuana plants inside. Two young men returned to the vehicle. The deputy arrested them. They said

---

**1.** Section 195.020.1, RSMo Supp.1980, reads, in pertinent part:

"It is unlawful for any person to manufacture ... any controlled or counterfeit substance...."

"'Manufacture' means the production ... of a controlled substance," § 195.010(21), RSMo Supp.1982.

"'Production' includes the manufacture, planting, cultivation, growing ... of a controlled substance," § 195.010(30), RSMo Supp. 1982. *See also State v. Netzer,* 579 S.W.2d 170, 174 (Mo.App.1979).

they had waded across the nearby Pomme de Terre River and had stolen the marijuana from "the old man who owned the farm," indicating defendant James Fullerton.

A search warrant was obtained on the basis of this information. One of the two young men accompanied law enforcement personnel as they returned to the arrest site and waded across the river, entering defendant's property in the vicinity the young men had earlier entered. Once across the river, they came upon a field containing 942 well-tended, spiked, fertilized and watered marijuana plants, some of which reached 16 feet in height, 8 feet in diameter of foliage, and 4 inches in diameter of main trunk. The plants were watered by an elaborate irrigation system. A pipe in a nearby stream was connected to a Homelite motor-powered water pump, a muffler on it to lessen the sound and camouflage on it, presumably to disguise it from aerial view. Over 500 feet of two-inch plastic pipe was seized, having been strung out along the neatly-planted rows. A "trip wire" strung six inches above the ground surrounded one field of over 800 plants, and lookout tents had been pitched and attempts made to shield those tents from overhead view. A more detailed recitation of the facts will follow where relevant.

### I

Defendant contends the trial court erred in overruling his motion for judgment of acquittal at the close of the state's evidence because there was insufficient evidence to warrant submission to the jury that defendant "knowingly and intentionally manufactured a controlled substance by cultivating marijuana either actually or constructively."

In review, we take as true all evidence, whether direct or circumstantial, tending to prove defendant's guilt, along with all reasonable favorable inferences from the evidence, and we disregard all evidence to the contrary. *State v. Reed*, 453 S.W.2d 946, 949 (Mo.1970).

Over 942 marijuana plants were found on defendant's farm, each one staked and carefully tied to six and a half foot tall green steel posts. An irrigation system had been set up, as noted above. A trip wire surrounded one field, and lookout tents had been staked and shielded from aerial view.

Deputy Parson testified without objection that two of the informants said they had seen defendant in the marijuana fields. "When hearsay evidence is admitted without objection, it is in the case for all purposes and may be given its natural and logical probative effect by the trier of facts." *State v. Cannady*, 660 S.W.2d 33, 39 (Mo.App.1983).

In April 1982 an alarm in the home was installed, the trigger point or "probe" being buried on the gravel road, the only road leading onto the property, at a distance of 600 to 900 yards from the house; its purpose was to warn defendant of vehicles entering or leaving his property. A well-beaten-down path where vehicles had traveled runs from the house to the marijuana fields. As to access to the fields from across the river to the north, Deputy Sheriff Parson said, "There is no place you can cross the river unless you do it by foot that I am familiar with."

Seventeen-year-old Tim Skidmore had visited defendant's farm with his mother and brother about twenty times from late June to mid-September 1982. He regularly mowed defendant's grass. Skidmore testified that on two occasions he and his brother cut thistles in an area 200 yards north of the house while defendant supervised them. In referring to fields northeast of the house, in the direction of the marijuana fields, the witness said defendant told him, "Back over there there is just trees and stuff," and "I've chopped them [thistles] already and there's not no [sic] more over there."

The defendant's ignorance of this extensive operation on his farm was not credible. The well-worn road on his property, passing by the house where he lived alone,

leading to the marijuana field; his extraordinary measures to detect the approach of traffic on the road leading to his house; the obvious activity connected with the cultivation of the marijuana, all militate against his innocence and point to his knowing and intentional participation in the marijuana cultivation.

There was sufficient evidence to submit the case to the jury and enough evidence from which a reasonable jury could have found defendant guilty of knowingly and intentionally growing and cultivating marijuana. The point is denied.

## II

The defendant filed a motion for discovery, requesting of the state "[a]ny books, papers, documents, photographs or objects which the State *intends to introduce into evidence* at the hearing or trial or which were obtained from or belonged to the Defendant." (Emphasis ours). To that question, the state answered, "None", and on that basis the defendant challenges the admissibility into evidence of the Homelite pump because it says it was not disclosed to the defense in pretrial discovery. In the same motion for disclosure, defendant asked the state to "provide the defense with a list of all items *seized at the James Fullerton farm* during the week of August 22, 1982". (Emphasis ours). The state's answer to that question includes the Homelite pump.

■ Disclosure of the evidence—the Homelite pump—occurred, but disclosure of the state's intent to introduce the evidence at trial did not. In addition, the defense attorney did not timely advise the court that the pump had not been disclosed to him. Instead, he allowed the prosecutor without objection to elicit oral testimony about the pump from Deputy Parson. The pump had been marked as an exhibit and

was before the jury as the witness testified in reference to it. He did not object until the prosecutor sought to have the pump itself admitted as evidence. There could be no possible prejudice in the admission of the pump itself into evidence. There was certainly no surprise to the defendant. *State v. Smothers*, 605 S.W.2d 128, 131–32 (Mo. banc 1980). The point is denied.

## III

Defendant contends that "the trial court erred in failing to disclose to the parties that he was related to the prosecuting attorney to the third degree and in failing to recuse himself from the trial as a result of this relationship". The applicable standard is found in Rule 2 C(4), Canon 3 of the Code of Judicial Conduct:

A judge has a duty to disclose to all parties, or to their attorneys, that any person acting as a lawyer in the proceeding or the spouse of such a person is within the third degree of relationship to the judge or his spouse by blood or marriage. If after such disclosure any party or his attorney requests that the judge disqualify himself by reason of such relationship the judge shall do so.

■ For purposes of this section the degree of kinship or relationship is calculated according to the civil law system, Rule 2 C(3)(a). See Section 474.010(2)(d), RSMo Supp.1982.[2] In this case the trial judge's daughter is married to the prosecutor's brother. They share no common ancestor; the judge is not a relative or kin of his son-in-law's brother. No disclosure or recusal is required. We note that there is no claim of actual partiality on the part of the judge and no claim of prejudice based on partiality. The point is denied.

2. The statute reads in pertinent part:
   [C]ollateral relatives, that is, relatives who are neither ancestors nor descendants of the decedent, may not inherit unless they are related to the decedent at least as closely as the ninth degree, *the degree of kinship being computed according to the rules of the civil law; that is,*

*by counting upward from the decedent to the nearest common ancestor, and then downward to the relative, the degree of kinship being the sum of these two counts, so that brothers are related in the second degree.* [Emphasis ours.]

## IV

Defendant claims that the verdict-directing Instruction No. 8, patterned after MAI–CR2d 2.04, "did not accurately and completely instruct the jury to the various punishments that might be assessed and therefore, created confusion in the mind of the jury as to what punishment could be assessed, thus defendant was prejudiced to the extent that he received the maximum sentence."

■ Defendant's criticism of the instruction is that it does not state a minimum term of years in a state correctional institution. The instruction followed the statute, Section 195.200.1(1), which prescribes no minimum term. There is no reason to suppose that the jury was in any way confused or misled. There is no merit to defendant's argument that the jury should have been told that the minimum term in a state correctional institution was one year.

The point is denied.

## V

In two points on appeal, defendant claims the trial court erred (1) in failing to quash an allegedly invalid search warrant and in failing to suppress the evidence obtained as a result of execution of that search warrant, and (2) in failing to suppress evidence obtained by law enforcement personnel who, in an allegedly warrantless search, violated defendant's "expectation of privacy." The gist of the second point we take to be a challenge to the technical trespass which may have been committed by the officers in entering defendant's property under an allegedly invalid warrant and an attempt to argue that the open fields doctrine does not apply.

The marijuana was growing in several patches on the northeasternmost portion of defendant's farm. The houses and outbuildings were located southwest of the marijuana patches at the closest point one-quarter to one-half mile away from the house. The Pomme de Terre River forms the western and northern boundary of defendant's farm, flowing in a northerly direction at the western edge of the farm and west of the house, and then flowing northeast forming the northern border of the farm. The record is unclear, but it appears a forest bordered the farm on the east. A gravel road runs east-west along the southern portion of the farm from the house to the county road. Other "roads" or well-trodden paths which showed signs of continous, recent vehicle traffic led from the house to the marijuana fields. Sheriff Charles Simmons and Deputy Sheriff Harold Walker parked in a squad car on the gravel road south and east of the farm with a search warrant and a "walkie-talkie", and kept in radio contact with Deputy Mike Parson who, together with one of the informants and four other officers, entered the defendant's farm from the north, crossing the Pomme de Terre River at the northeast section of defendant's farm.

■ The validity of the search warrant is not at issue in this case because, as will be shown, the open fields doctrine applicable to this case obviates the need for a search warrant.

Several Missouri cases address the open fields exception to the warrant requirement. In *State v. Simpson,* 639 S.W.2d 230 (Mo.App.1982), defendant was "staying" at the farmhouse when, 100 yards to one-quarter mile away in a wooded area of the farm, a cultivated plot of marijuana was seized without a warrant. The court held the seizure proper under the open fields exception to the Fourth Amendment warrant requirement because the area 100 yards to one-quarter mile away from the farmhouse was not within the curtilage of the farmhouse but was in open fields to which defendant's legitimate, reasonable expectation of privacy did not extend. More recently, in *State v. Fierge,* 673 S.W.2d 855 (Mo.App.1984), the court held the curtilage ends with the walls of remote outbuildings, in this case, only 180 feet north of defendant's house, and beyond that the open fields can be searched without a warrant. Most recently in *State v. Seaton,* 679 S.W.2d 908 (Mo.App.1984), the court held that a marijuana patch sur-

rounded by woods (and thus not visible from the farmhouse of the same property 100 to 150 yards away) was part of the open fields to which the warrant requirement does not apply.

The United States Supreme Court reaffirmed the viability of the open fields doctrine in *Oliver v. U.S.*, — U.S. —, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984), where Justice Powell, writing for the majority, stated:

> [T]he rule of *Hester v. United States* [265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) ] ... that we *reaffirm today*, may be understood as providing that an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home....
>
> [O]pen fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields.

104 S.Ct. at 1741.

■ The marijuana patches located one-quarter to one-half mile from defendant Fullerton's house were outside the curtilage of the farmhouse and were open fields to which neither the warrant requirement of Article I, Section 15 of the Missouri Constitution nor of the Fourth Amendment of the United States Constitution applies. The defendant in this case may claim no legitimate expectation of privacy there. The fact that a civil trespass may have occurred does not affect the doctrine's application to this case. *State v. Simpson*, 639 S.W.2d at 232. See also *Oliver v. U.S.*, — U.S. at —, 104 S.Ct. at 1743. The seizure of the marijuana and other evidence was proper.

## VI

Defendant next claims that the trial court erred in failing sua sponte to order a mistrial "when the prosecuting attorney elicited responses from the Polk County sheriff which indicated the defendant was involved in a possible crime other than the one with which he was charged."

The testimony in question is the following:

Q. [Prosecuting Attorney Charles G. Ankrom] And for what purpose did you make the trip to this farm?

A. [Polk County Sheriff Charles Simmons] To serve the search warrant in looking for marijuana.

Q. Looking for marijuana? Sheriff, how did you know where you were going?

A. You mean how did I know where Fullerton's house was or—?

Q. Yes.

A. Well, I'd been there before.

Q. You had been there before?

A. Yes.

Q. Do you recall how many times you'd been there before?

A. Two or three times before.

Q. And what had you gone there before to do?

A. The last time I'd been there was to look for a stolen hay baler.

Q. Stolen hay baler? Did you find it?

A. Yes, sir.

Q. On the Fullerton farm?

A. No, it wasn't on that farm when I found it. It was up at Pleasant Hope.

■ Although he raised the point in his motion for new trial, the defendant did not object to this testimony during trial, nor did he request any relief. It is therefore not preserved for appellate review. *State v. Evans*, 639 S.W.2d 820, 822 (Mo. 1982). We cannot say this is plain error. The sheriff's statement actually did not incriminate defendant, and we cannot say with certainty that the jury so understood the somewhat ambiguous testimony of the sheriff. *State v. Jones*, 523 S.W.2d 152, 155 (Mo.App.1975).

## VII

In his next point, defendant contends the trial court erred in allowing the prosecutor to cross-examine defendant about a statement he allegedly made to a fellow inmate while jailed on this charge. He claims it violated his right to confront witnesses against him and asserts the trial court committed plain error in so doing.

The testimony defendant complains of was elicited from the defendant by the prosecutor on cross-examination. We copy from the transcript:

Q. Mr. Fullerton, when you were taken to the jail, did you occupy a cell by yourself?

A. No, sir. I was in with someone else.

Q. What was that man's name?

A. I have no idea.

Q. Did you make a statement to a man named Roger Johnson that the officers would never be able to trace any of that stuff to you?

A. No, I did not. I don't even know Roger Johnson.

■ Once again we are asked to reverse this conviction because of the trial court's failure to intervene sua sponte. But we cannot hold this to be plain error, or, for that matter, error of any kind. The defendant's statement to "Roger Johnson," if admitted, was not necessarily inculpatory. It could have been understood as a protestation of innocence. Defendant supposes that the jury understood the statement as being an expression of confidence that he had covered his tracks well, but its meaning is not clear enough that we could condemn the court's inaction as plain error. Furthermore, if defendant had admitted making such a statement, it would have been admissible. Defendant's "confrontation of witnesses" argument has no relevance. There is nothing in this record to indicate any bad faith on the prosecutor's part in asking the question.

The point is denied.

We affirm the judgment.