STATE of Missouri, Respondent,

v.

Thomas Lee UMPHFREY, Appellant.

No. WD 36199.

Missouri Court of Appeals, Western District.

June 11, 1985.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied July 30, 1985.

Application to Transfer Denied Sept. 10, 1985.

Holly G. Simons, Columbia, for appellant.

William I. Webster, Atty. Gen., T. Chad Farris, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and DIXON and KENNEDY, JJ.

PER CURIAM:

Umphfrey appeals his conviction, as an aider and abettor, of first degree robbery, in violation of section 569.020 RSMo 1978, and his sentence, as a persistent offender, to life imprisonment. He asserts the trial court erred in (1) overruling his motion to suppress and his objections because his statements to the police allegedly were not voluntarily made; (2) failing to sustain his motion for acquittal because of insufficient evidence; and (3) conducting the persistent offender hearing and sentencing him as such after the jury had assessed punishment.

Because Umphfrey argues sufficiency of the evidence, a factual recitation is needed. In evaluating sufficiency, this court deems true all direct or circumstantial evidence which tends to prove defendant's guilt, along with all reasonable favorable inferences drawn therefrom and disregards all evidence to the contrary. *State v. Brown*, 660 S.W.2d 694, 698–99 (Mo. banc 1983); *State v. Fullerton*, 684 S.W.2d 59, 61 (Mo. App.1984).

Viewed in that light, the evidence is as follows: On April 25, 1983, a man, later identified as William Umphfrey, defendant's brother, entered the Holt Steel Inn, wearing a nylon stocking mask. At gunpoint, he took $5,512.50 from the Inn's night manager, Ms. Adair, and later fled. Defendant and his wife, Kim, had been staying at the Inn for approximately one week before the robbery occurred. During that week, defendant had told Kim the Inn could be easily robbed and had purchased the gun and the ammunition his brother used in the robbery. One day before the robbery, at William's home, defendant and William had a private discussion and defendant then asked Kim for some nylon stockings. Upon returning to the Inn, defendant and William studied the layout of the Inn and its surroundings and found an abandoned structure defendant thought would serve as a hiding place. Later that evening, defendant drew a map of the Inn's office for William, pinpointing the location of the safe. Prior to the robbery, defend-

ant drove William to the Inn and afterwards, drove the escape vehicle.

Umphfrey first alleges the trial court erred in overruling his motion to suppress and his objection to the admission of his statements made to the police because the statements allegedly were not voluntarily made. Because it is from the "totality of the circumstances" that the voluntariness of a statement is determined, *State v. Flowers,* 592 S.W.2d 167, 168–69 (Mo. banc 1979), an explication of those circumstances is necessary.

The record made at the suppression hearing is less than complete. The sole testifying witnesses at the hearing were Umphfrey and Officer Kinkaid, who had been present during Umphfrey's first hours in custody. Both men testified that Umphfrey came into police custody between 4:30 and 5:00 a.m. on April 25 and that his statement was taken at 11:05 a.m. on April 26, some thirty hours later. Kinkaid indicated Umphfrey was read his *Miranda* rights at the outset and, each time the officers spoke to him, he was asked if he remembered and understood those rights. Kinkaid stated Umphfrey never said he would not talk to the police and never requested an attorney, but rather agreed to talk to the police from the outset. Kinkaid noted that Umphfrey's one phone call was made to his father and not to an attorney. Kinkaid further noted that Umphfrey periodically talked to the police (before giving his statement) and gave information, which was checked out, all the while denying having robbed the Inn. Umphfrey, however, testified that he requested an attorney, but one was not provided him. He also stated, making specific reference to three incidents, that the police asked him about ten times if he would make a statement, but that, each time, he refused. Umphfrey stated that, upon being brought to the jail, he was left in the booking room for six hours and was only then transferred to a cell. Kinkaid denied the time frame Umphfrey placed on events and said that Umphfrey was in the booking room for an indeterminate period of time and was later in a cell.

This is the totality of the record. No questions were asked about the timing of, nor the conditions surrounding, the questioning sessions. It is likewise unclear if Umphfrey was questioned in his cell or in the booking room after the initial six hours allegedly spent in the booking room.

The crux of Umphfrey's argument is that, because he was in custody for approximately thirty hours before giving a statement, in a coercive atmosphere designed to overbear his free will, his statement was involuntary and thus should have been suppressed. As the statement was the result of custodial interrogation, the state must show, by a preponderance of the evidence, that it was voluntarily made. *State v. Craig,* 642 S.W.2d 98, 100–01 (Mo. banc 1982). However, "[a]bsent a showing of special circumstances, the state need only make a prima facie case of voluntariness by showing that at all stages of interrogation the accused was advised of his constitutional rights and that no physical force, threats, or coercive tactics were used to obtain the confession." *State v. Harris,* 670 S.W.2d 526, 528 (Mo.App.1984); *State v. Thomas,* 596 S.W.2d 409, 412 (Mo. banc 1980). The trial court's duty is to "determine the credibility of witnesses, and where evidence is in conflict, make factual findings. On appeal, the question is 'whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given.'" *State v. Hughes,* 596 S.W.2d 723, 727 (Mo. banc 1980), citing, *State v. Alewine,* 474 S.W.2d 848, 852 (Mo.1971). Under this standard, it is evident the trial court did not abuse its discretion in not suppressing Umphfrey's statements.

Upon being taken into custody, Umphfrey, who testified that he understood the meaning of the *Miranda* warnings, was read his rights and, each time the police spoke with him thereafter, he was reminded of those rights. Also, prior to making a statement, Umphfrey read and signed the rights waiver form. According to the officer, Umphfrey never requested an attorney

(a statement Umphfrey denied) and, instead of using his one phone call to contact an attorney, he attempted to contact his father. Although Umphfrey stated that he refused to talk to the police until the morning of April 26, Kinkaid testified that Umphfrey had freely volunteered information, which the police checked out, throughout the thirty hour period. The officer further testified that Umphfrey was not promised anything and was neither threatened nor coerced in any fashion before giving his statement. Although Umphfrey asserts the thirty hours spent in custody, interspersed with periods of questioning by the police, finally led to his making a statement, the trial court was free to judge the credibility of the witnesses and their conflicting testimony about the allegedly coercive atmosphere in which Umphfrey was being held. *State v. Buckles*, 636 S.W.2d 914, 923–24 (Mo. banc 1982); *Hughes, supra*, 596 S.W.2d at 727; *State v. Hurt*, 668 S.W.2d 206, 212 (Mo.App.1984); *State v. Carroll*, 562 S.W.2d 772, 773 (Mo.App. 1978). The state made a prima facie case of voluntariness and the court did not abuse its discretion in refusing to suppress Umphfrey's statements.

■ Umphfrey also asserts there was insufficient evidence from which the jury could find he did anything intended to or which did, in fact, aid his brother in the commission of the offense. The evidence as adduced at trial was clearly sufficient, *Fullerton, supra*, 684 S.W.2d at 61, as Umphfrey engaged in the planning and escape stages of the offense. Umphfrey suggests he had abandoned the scheme prior to the commission of any affirmative acts in the offense, because he left the Inn at 2 a.m., prior to the robbery. That Umphfrey left the Inn is not inconsistent with the evidence that he was to, and did, in fact, pick up his brother after the robbery. Further, Umphfrey produced no evidence to support an affirmative defense of abandonment or withdrawal and thus, of necessity, it must fail. *State v. Skillicorn*, 635 S.W.2d 82 (Mo.App.1982); *See, State v. O'Neal*, 618 S.W.2d 31, 36–37 (Mo.1981).

■ Umphfrey last asserts the court erred in holding the persistent offender hearing after the close of all the evidence and after the case was submitted to the jury, in contravention of section 558.021 RSMo Supp.1984. Umphfrey also notes the jury had previously assessed punishment at 18 years and, following the persistent offender hearing, the court sentenced him to life imprisonment. He asserts the earlier assessment of a lesser punishment by the jury created in him a reasonable expectation of sentencing, which the court's action then violated.

This court's decision in *State v. Bryant*, 658 S.W.2d 935 (Mo.App.1983), is a case procedurally similar and controlling of this point. There, as here, the issue was not raised either at the sentencing hearing or in the new trial motion, thus limiting appellate review to that of plain error. Rule 84.13(c). There, the court held that, while under the statute, the hearing should have been held prior to submission to the jury, because the judge ultimately determines punishment upon the jury's finding of guilt in a persistent offender situation, and thus no expectation could be reasonably based on the jury's assessment of punishment, and because no showing was made that defendant was in any way prejudiced by the delay, no manifest injustice or miscarriage of justice resulted. *Id.*, at 938–40. Likewise here, Umphfrey was not prejudiced by the hearing's having been held after the case was submitted to the jury. The point is denied.

The judgment and sentence are affirmed.