**CITY OF SPRINGFIELD, Missouri, Plaintiff–Respondent,**

v.

**Steven Maurice HAMPTON, Defendant–Appellant.**

No. 25747.

Missouri Court of Appeals, Southern District, Division One.

Sept. 29, 2004.

Motion for Rehearing and Transfer to Supreme Court Denied Oct. 21, 2004.

S. Dean Price, Springfield, for Appellant.

Patricia Sullivan, Springfield, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Steven Maurice Hampton appeals from a conviction for driving while intoxicated.[1] Hampton raises one point on appeal challenging the trial court's admission of the evidence of intoxication because of the officer's lack of authority to make the initial stop for speeding. We affirm.

### FACTS

In the early morning hours of October 12, 2000, Officer Brian Reeves of the Springfield Police Department observed a white Dodge Ram pickup truck traveling northbound on Kimbrough Avenue at a rate of speed that appeared to be greater than the posted 20 mile-per-hour speed limit. Officer Reeves' radar equipment indicated that the pickup was traveling at 30 miles per hour. Reeves concluded that the vehicle was likely speeding and he activated his emergency equipment and stopped the truck. Steven Hampton was driving the vehicle. When Officer Reeves made contact with Hampton, Reeves noticed that Hampton's breath contained an odor of intoxicants, his eyes were bloodshot and glossy, and his speech was somewhat slurred. Reeves conducted three field sobriety tests—the horizontal gaze nystagmus test, the walk-and-turn test and the one-leg stand test—on Hampton. He failed each test and was arrested for driving while intoxicated; he was given a blood alcohol content test at the jail which showed that he had a blood alcohol level of .161 %.

The City of Springfield charged Hampton with driving while intoxicated and speeding. At the ensuing proceedings, the Springfield Municipal Court found Hampton guilty on both charges, and Hampton subsequently requested a trial *de novo*.

Prior to the trial, Hampton moved to suppress the intoxication evidence due to an inadequate basis for the traffic stop. On May 6, 2003, the Honorable Dan Conklin denied the motion to suppress and found Hampton guilty on both counts. On July 10, 2003, the court sentenced Hampton to a five hundred dollar fine, a sixty-day suspended jail sentence and one year of supervised probation for the driving while intoxicated violation.

### STANDARD OF REVIEW

Appellate review of a trial court's decision regarding a motion to suppress evidence "is limited to a determination of whether there is substantial evidence to support its decision." *State v. Tackett,* 12 S.W.3d 332, 336 (Mo.App. W.D.2000). The trial court's ruling on a motion to suppress

---

1. Hampton was also convicted of speeding; however, he does not challenge that conviction on appeal.

evidence will be reversed only if it is clearly erroneous and the appellate court is left with a definite and firm belief that a mistake has been made. *State v. Leavitt,* 993 S.W.2d 557, 560 (Mo.App. W.D.1999). All evidence and any reasonable inferences that could be drawn from the evidence will be viewed in the light most favorable to the trial court's ruling. *Tackett,* 12 S.W.3d at 336. Both the record made at the suppression hearing as well as the evidence introduced at trial are included within the scope of review. *State v. Deck,* 994 S.W.2d 527, 534 (Mo. banc 1999). If the ruling is plausible, in light of the entire record, an appellate court will not reverse, even if convinced that it would have weighed the evidence differently. *State v. Milliorn,* 794 S.W.2d 181, 184 (Mo. banc 1990). The factual findings are reviewed only to ascertain if they are supported by substantial evidence, viewing the facts in the light most favorable to the trial court's ruling and disregarding contrary evidence and inferences. *State v. Hoopingarner,* 845 S.W.2d 89, 92 (Mo.App. E.D.1993). Although the appellate court gives deference to the trial court's determination of the credibility of witnesses, whether the Fourth Amendment was violated is a question of law that the appellate court reviews *de novo. State v. Pfleiderer,* 8 S.W.3d 249, 253 (Mo.App. W.D.1999).

### ANALYSIS

The thrust of Hampton's point on appeal is that Officer Reeves was without authority to stop him because the radar unit, which was used by the officer during the initial speeding stop, was inaccurate due to improper certification, maintenance and testing. In his argument, Hampton cites cases standing for the proposition that a speeding conviction cannot be based upon a radar device reading without proof that the unit was properly tested and functioning properly. The fallacy of Hampton's argument is that he is not appealing his speeding conviction; he is appealing his conviction for driving while intoxicated. Had Hampton appealed his speeding conviction, the reliability of the radar device might well have been the central focus of review. But here, Hampton questions the trial court's conclusion that Reeves had sufficient grounds to make the initial traffic stop. Therefore, the reliability of the radar unit is only relevant as it relates to Officer Reeves' authority to have made the initial stop, and we must look to the myriad of cases that discuss the necessary requirements for a legal traffic stop.

The Fourth Amendment to the United States Constitution preserves the right of persons to be secure against unreasonable searches and seizures. U.S. CONST. amend. IV; *Deck,* 994 S.W.2d at 534 (noting that Missouri's constitutional "search and seizure" guarantee is co-extensive with the Fourth Amendment). Warrantless seizures conducted by police officers are generally *per se* unreasonable unless they are within certain recognized exceptions to the warrant requirement. *State v. Taber,* 73 S.W.3d 699, 704 (Mo. App. W.D.2002). One of these exceptions is a *"Terry* stop," as recognized by the United States Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Id.* at 704–05. Under the principles outlined in *Terry v. Ohio,* a police officer may briefly stop a person when the officer has a reasonable suspicion, based upon specific and articulable facts, that the person is, was or is about to be engaged in criminal activity. *State v. David,* 13 S.W.3d 308, 311 (Mo.App. W.D. 2000).

Reasonable suspicion of criminal activity includes traffic violations. *See State v. Huckin,* 847 S.W.2d 951, 955 (Mo. App. S.D.1993) (finding that reasonable

suspicion existed where officer observed motorist weaving in the lane of traffic); *State v. Holmes*, 622 S.W.2d 358 (Mo.App. E.D.1981) (finding that reasonable suspicion existed where officer observed motorist traveling at high rate of speed and engaging in "suspicious" activities). If a police officer has knowledge of specific and articulable facts supporting his suspicion that the driver of a vehicle is committing or has committed a traffic violation, then the officer has sufficient grounds to make a *Terry* stop of the vehicle. *Taber*, 73 S.W.3d at 705.

In the present case, the trial court had substantial evidence to conclude that Officer Reeves was acting on a reasonable suspicion that Hampton had committed a traffic violation. Reeves first observed Hampton traveling at a rate of speed which appeared to be faster than the posted speed limit of 20 miles per hour. Although Reeves confirmed the validity of his observation with his radar equipment, the use of the radar equipment was not a necessary component of the initial stop. An underlying conviction for the traffic violation is not necessary to uphold the reasonable suspicion of the officer to initially stop the vehicle for a brief *Terry* stop; all that is necessary is that the officer had an articulable suspicion of the traffic violation. *See State v. Slavin*, 944 S.W.2d 314, 317 (Mo.App. W.D.1997) ("[a] police officer is authorized to stop a vehicle observed violating the traffic laws of the state"); *State v. Bunts*, 867 S.W.2d 277, 280 (Mo.App. S.D.1993) (traffic stop may be justified by observation of unusual conduct, such as an abrupt reduction of speed, which may not itself constitute a traffic violation).

Hampton questions the reliability of the radar unit used by Reeves and argues if the reliability of the unit was not sufficiently established, the trial court could

not properly rely on Reeves' testimony regarding the speed indicated by the radar unit. While Hampton is correct that the reliability of the unit is relevant to determine whether or not Hampton did in fact exceed the speed limit by ten miles per hour, our review does not concern whether Hampton was in fact speeding prior to the stop. Rather, our review concerns whether Reeves had reasonable suspicion to believe that Hampton was committing the crime of speeding prior to the stop. More precisely, our review asks whether sufficient evidence exists to support the trial court's decision that the stop was valid and the intoxication evidence was admissible. For the reasons detailed above, we find that the trial court had sufficient evidence to find that Reeves had reasonable suspicion to stop Hampton and, thus, that the trial court did not err in admitting the evidence of intoxication. The judgment is affirmed.

GARRISON, P.J., and PREWITT, J., concur.